1  CLAUDIA G. SILVA, County Counsel (SBN 167868)
   By: JOHN P. COOLEY, Chief Deputy (SBN 162955)
2  Office of County Counsel, County of San Diego
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469 Telephone: (619) 531-4860
   Email: john.cooley@sdcounty.ca.gov
4
   *Additional Counsel Appearances on the next page*
5
   *Attorneys for Plaintiff, THE PEOPLE OF THE*
6  *STATE OF CALIFORNIA, acting by and*
   *through the county of San Diego*
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/03/2024** at 12:02:36 PM

Clerk of the Superior Court
By Eva Noriega,Deputy Clerk

***Exempt from filing fees per Gov't Code § 6103***

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9
### COUNTY OF SAN DIEGO    '24CV0971 AJB  SBC

10

11  THE PEOPLE OF THE STATE OF
    CALIFORNIA,
12
                    Plaintiff,
13
        v.
14
    COAST RUNNER INDUSTRIES,
15  INC., GHOST GUNNER, INC., and
    DEFENSE DISTRIBUTED,
16
                    Defendants.
17

Case No.  37-2024-00020896-CU-MC-CTL

**COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF**

18
19
20
21
22
23
24
25
26
27
28

*Additional Counsel of Record*

**SULLIVAN & CROMWELL LLP**
ROBERT A. SACKS (SBN 150146)
E-mail:  sacksr@sullcrom.com
ALEXA M. COVER (SBN 317068)
E-mail:  covera@sullcrom.com
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

LEONID TRAPS (*pro hac vice* forthcoming)
E-mail:  trapsl@sullcrom.com
SOPHIE A. KIVETT (*pro hac vice* forthcoming)
E-mail:  kivetts@sullcrom.com
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

**GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE**
ESTHER SANCHEZ-GOMEZ (SBN 330408)
E-mail:  esanchezgomez@giffords.org
268 Bush St. # 555
San Francisco, CA 94104
Telephone:    (415) 433-2062
Facsimile:    (415) 433-3357

WILLIAM T. CLARK (*pro hac vice* forthcoming)
E-mail: wclark@giffords.org
244 Madison Ave, Ste 147
New York, NY 10016
Telephone:    (415) 433-2062
Facsimile:    (415) 433-3357

Plaintiff the People of the State of California, by and through the Office of County Counsel for the County of San Diego, bring this action against Defendants Coast Runner Industries, Inc. ("Coast Runner"), Ghost Gunner Inc. ("Ghost Gunner"), and Defense Distributed, alleging the following:

## I.    <u>INTRODUCTION</u>

1.    For several years, Defense Distributed has sold and marketed products and software designed to allow its users to evade state and federal firearms laws and to create ghost guns: untraceable, unserialized firearms that are uniquely popular among criminals.

2.    One of Defense Distributed's products is a computer numerical control ("CNC") milling machine called the "Ghost Gunner."  As the name suggests, the Ghost Gunner is specifically designed to enable users to build ghost guns.  According to Defense Distributed's website, the Ghost Gunner is a "third-generation, programmable desktop CNC with a gunsmithing design emphasis and related software" that supports "a growing library of firearms patterns, including the AR-15, AR-308, 1911, and Polymer80 frames."[1]  On its website, Ghost Gunner, Inc. describes the purpose of the Ghost Gunner in simple terms:  "The Ghost Gunner 3 aims to allow individuals to manufacture their own un-serialized firearms.  Un-serialized firearms are un-traceable.  Hence, the 'ghost gun' name."[2]

3.    California regulates the sale of CNC milling machines that, like the Ghost Gunner, are designed and marketed for making firearms.  For example, Assembly Bill 1621 (2021-2022 Reg. Sess.) ("AB 1621") generally makes it unlawful to sell or market a CNC milling machine that "has the sole or primary function of manufacturing firearms."  Stats. 2022, ch. 76, § 25 (enacted as Cal. Pen. Code § 29185(b)).  Likewise, Assembly Bill 1089 (2023-2024 Reg. Sess.) ("AB 1089") generally makes it unlawful to sell or market a CNC milling machine in a manner that "is targeted at purchasers seeking to manufacture firearms or that otherwise affirmatively promotes"

---

[1]    *About*, DEF. DISTRIBUTED, https://defdist.org/ [https://perma.cc/Y8LT-6PDU] (last visited April 28, 2024).

[2]    *Ghost Gunner for Dummies*, DEF. DISTRIBUTED, https://ghostgunner.zendesk.com/hc/en-us/articles/360024369772-Ghost-Gunner-for-Dummies [https://perma.cc/CNN7-RGAB] (last visited April 28, 2024).

the machine's "utility in manufacturing firearms."  Stats. 2023, ch. 243, § 2 (enacted as Cal. Civ. Code § 3273.62(a)-(b)).

4.     Defense Distributed is well aware of California's laws on CNC milling machines. When AB 1621 was enacted, Defense Distributed filed a lawsuit in federal court seeking to enjoin enforcement of the new law.  In its complaint, Defense Distributed recognized that AB 1621 would "effectively prohibit Defense Distributed from selling . . . the Ghost Gunner" in California.[3] Defense Distributed lost the challenge, as the court wholly rejected Defense Distributed's claim that the company had a Second Amendment right to market the Ghost Gunner to California consumers.[4]

5.     However, shortly after Defense Distributed lost its lawsuit, a purportedly "new" CNC milling machine appeared on the market:  the "Coast Runner."[5]

6.     The "Coast Runner" and the "Ghost Gunner" share more than just similar rhyming names.  The "Coast Runner" is in fact the Ghost Gunner with a new coat of paint.  It has the same internal designs, the same features, and is being marketed for the same purpose:  the illegal production of untraceable ghost guns.  Moreover, it is being sold and marketed by the same company, as public records show that Coast Runner Industries, Inc. is merely an alter ego of Ghost Gunner Inc. and Defense Distributed.

---

[3]     First Amended Complaint for Declaratory and Injunctive Relief at 2, *Def. Distributed* v. *Bonta*, No. CV 22-6200-GW-AGR (C.D. Cal. Sept. 21, 2022) ("Defense Distributed Am. Compl.").
[4]     *Def. Distributed* v. *Bonta*, 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022), *adopted*, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022).
[5]     The earliest version of the Coast Runner webpage available on public web archives is from February 7, 2023.  Corporate records reflect that "Coast Runner Industries, Inc." was incorporated on or about February 3, 2023.



**FIGURE 1:** Left, Image of Coast Runner from Coast Runner Kickstarter; Right, Image of Ghost Gunner from Ghost Gunner Website.

7.      In early 2024, Defendants began an aggressive marketing campaign for the Coast Runner. The device had its own booth at "the largest and most comprehensive trade show" for the firearms industry, known as the Shooting, Hunting, and Outdoor Trade — or SHOT — Show, held in Las Vegas, Nevada. The organizers of SHOT Show 2024 promoted the Coast Runner as "one of the hottest new products" in the firearms industry.[6]

8.      Unregulated, unserialized firearms have had tragic consequences in California and continue to pose a grave and urgent danger to the People of California. According to a 2023 report from the California Office of Gun Violence Prevention, the number of ghost guns recovered in connection with crimes in California per annum has increased exponentially over the past decade, from 26 total ghost guns recovered in 2015 to 12,894 ghost guns recovered in 2022.[7]

---

[6]      SHOT Show, *New Product Center - Top Scanned Products | SHOT Show 2024*, YOUTUBE (Jan. 25, 2024), https://www.youtube.com/watch?v=YNPHbIG8ou4.
[7]      OFFICE OF GUN VIOLENCE PREVENTION, CAL. DEP'T OF JUSTICE, DATA REPORT: THE IMPACT OF GUN VIOLENCE IN CALIFORNIA 23 (2023), https://oag.ca.gov/system/files/media/OGVP-Data-Report-2022.pdf [https://perma.cc/2UYL-Q4ZS].



**FIGURE 2:** Chart from the 2023 Office of Gun Violence Prevention Report reflecting the annual number of ghost guns recovered as crime guns in California.

9.    Defendants flout California law with too-cute-by-half sales and marketing tactics. The Coast Runner is not a joke—it is an illegal device designed, marketed, and sold to enable its users to make firearms and to violate California's gun violence prevention laws. Plaintiff brings this suit to put an end to Defendants' flagrant violations of California law and to seek remedy for the harm Defendants have caused and are continuing to cause in California.

## II.    PARTIES

10.    Plaintiff is the People of the State of California by and through the Office of County Counsel for the County of San Diego. Under California Civil Code § 3273.62(d), "the Attorney General, county counsel, or city attorney may bring an action" in "the name of the people of the State of California" against "a person [who] has violated this section."

11.    Defendant Ghost Gunner, Inc. is a Texas corporation with its principal place of business in Austin, Texas. Ghost Gunner's registered agent is Defense Distributed. The director of Ghost Gunner, Inc. is Cody Rutledge Wilson.

12.    Defendant Coast Runner Industries, Inc. is a Texas corporation founded on February 3, 2023, with its principal place of business in Austin, Texas. According to its certificate of formation, Coast Runner Industries, Inc. was organized by "CR Wilson."

13.    Defendant Defense Distributed is a corporation organized under the laws of the State of Texas. Cody Rutledge Wilson is the co-founder of Defense Distributed. Defense Distributed designed, marketed, and continues to market the Ghost Gunner.

## III.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to Cal. Const. art. VI, § 10 and Cal. Code Civ. Proc. § 410.10.

15.    This Court has personal jurisdiction over Defendant Ghost Gunner, Inc. because Ghost Gunner, Inc. has engaged directly and through its agents in systematic and ongoing business transactions in the State of California, including but not limited to the design, testing, import, marketing, supply, warranty, distribution, misrepresentation, and sales of the illegal products that form the basis of the suit in California. Defendant Ghost Gunner, Inc. intended to, and did, target distributors, retailers, and consumers in the State of California for sales of its Ghost Gunner and Coast Runner products and has otherwise availed itself of the benefits of the laws of California.

16.    This Court has personal jurisdiction over Defendant Coast Runner Industries, Inc. because Coast Runner Industries, Inc. has engaged directly and through its agents in systematic and ongoing business transactions in the State of California, including but not limited to the design, testing, import, marketing, supply, warranty, distribution, misrepresentation, and sales of the illegal products that form the basis of the suit in California. Defendant Coast Runner Industries, Inc. intended to, and did, target consumers in the State of California for sales of its Coast Runner products and has otherwise availed itself of the benefits of the laws of California.

17.    This Court has personal jurisdiction over Defendant Defense Distributed because Defense Distributed has engaged directly and through its agents in systematic and ongoing business transactions in the State of California, including but not limited to the design, testing, import, marketing, supply, warranty, distribution, misrepresentation, and sales of the illegal products that form the basis of the suit in California. Defendant Defense Distributed intended to,

and did, target consumers in the State of California for sales of its Ghost Gunner and Coast Runner products and has otherwise availed itself of the benefits of the laws of California.

18.     Venue is proper in this Court under California Code of Civil Procedure § 395.5 because Defendants' obligation or liability arises from the County of San Diego.  Defendants have specifically targeted their illegal Coast Runner product to the San Diego market, for instance, by including an arbitration provision in the Coast Runner's Terms & Conditions specifying that any arbitration "will take place in San Diego, California."

## IV.    FACTUAL BACKGROUND

### A.    Defense Distributed, Ghost Gunner, Inc., and Cody Wilson

19.     Defense Distributed and Ghost Gunner, Inc. were founded by Cody Wilson, a self-described "crypto-anarchist" who is credited with creating the first 3-D printed firearm.  In 2012, Wilson was even featured on a list of "The 15 Most Dangerous People in the World," alongside notorious figures such as President Bashar al-Assad of Syria and Joaquín "El Chapo" Guzman.[8] Wilson is also the founder of "Hatreon," a crowdfunding website frequently used by neo-Nazi groups that have been banned from other websites.[9]

20.     Wilson has spoken directly about the purpose and intent of the Ghost Gunner.  In one interview, he claimed that the Ghost Gunner is the sole product that allows individuals "to take raw materials . . . in their primordial state . . . and turn them into guns."[10]  As he explained, "[t]here's a world of things that are not gun parts.  We will give you the technology to turn these things into guns and gun parts."[11]

21.     Wilson has consistently demonstrated an indifferent attitude towards the tragic human toll of gun violence.  In fact, in the month following the 2018 shooting at Marjory Stoneman Douglas High School in Parkland, Florida—in which a 19-year-old shooter killed 17 people and

---

[8]     Neil Redmond, *The 15 Most Dangerous People in the World*, WIRED (Dec. 19, 2012), https://www.wired.com/2012/12/most-dangerous-people/ [https://perma.cc/KR83-UPVK].
[9]     Dave Montgomery and Ian Urbina, *A Push for 3-D Weapons by One of the World's 'Most Dangerous People'*, N.Y. TIMES (Aug. 1, 2018), https://www.nytimes.com/2018/08/01/us/3d-guns-printing.html [https://perma.cc/EYS9-JWHG].
[10]     Zach Weissmueller, *Cody Wilson Thwarts Another Attempt to Stop Ghost Guns*, REASON (Jan. 12, 2022), https://reason.com/video/2022/01/12/cody-wilson-thwarts-another-attempt-to-stop-ghost-guns/ [https://perma.cc/K6XJ-XC8F].
[11]     *Id.*

injured 17 others—Wilson told a reporter that sales of the Ghost Gunner doubled, and that his machines had produced an estimated 25,000 to 30,000 AR-15s in circulation.[12]

22.    For years, Wilson's stated goal has been to devise products that evade gun safety regulations, particularly those in California.  For example, a 2016 Defense Distributed statement declared:  "We are not blind to the impending threat [Hillary Clinton], *coming California legislation*, and the prohibitionists in the media pose to our modern rifles and to the Second Amendment.  And we are not relaxing.  Though we are proud of what we've been able to offer the people in the last two years with GG, *we know we must commit ourselves anew to the defense of our liberties and to offering you a machine that can last through prohibition and even the eventual breakup of this country*."[13]

23.    Wilson and Defense Distributed also made a video directed "To California" that mocked California's legislative efforts to curb the manufacture and sale of certain gun parts.[14]

24.    Wilson's attack on California regulations culminated in August 2022, when Defense Distributed filed a federal lawsuit challenging AB 1621, claiming the law violated Defense Distributed's purported Second Amendment right to sell its Ghost Gunner product.

25.    In its lawsuit, Defense Distributed explained that Defense Distributed "sells products and software that allow consumers to self-manufacture some of the most popular firearms in the United States."[15]  Defense Distributed described its Ghost Gunner product as a CNC milling machine "that gives purchasers the ability to complete unfinished frames and receivers for various types of firearms, including the AR-15, AR-308, M1911, and AK-47."[16]  According to Defense Distributed, "[b]ecause the materials provided by Defense Distributed often do not have serial numbers and are not licensed with the federal government, they may be used to make what are

---

[12]    *See Cody Rutledge Wilson*, SOUTHERN POVERTY LAW CENTER, https://www.splcenter.org/fighting-hate/extremist-files/individual/cody-rutledge-wilson [https://perma.cc/4JBR-ZSYM].
[13]    *Id.* (emphasis added).
[14]    *Id.*
[15]    Defense Distributed Am. Compl. at 1.
[16]    *Id.* at 1-2.

popularly known by the moniker 'ghost guns.'"[17]  Defense Distributed subsequently moved for a preliminary injunction seeking to prevent enforcement of AB 1621.

26.    On October 24, 2022, the U.S. District Court for the Central District of California denied Defense Distributed's motion for a preliminary injunction in its entirety.[18]  According to the Court, Defense Distributed failed to demonstrate "either a 'likelihood' of prevailing on the merits or even a 'reasonable probability of success' in connection with its case against AB 1621."[19]

27.    On November 18, 2022, Defense Distributed agreed to a stipulated dismissal of its claims, including dismissal with prejudice of its claim that AB 1621 violated Defense Distributed's Second Amendment right to sell its Ghost Gunner products.

**B.    "Coast Runner"**

28.    Defendants' marketing and other public records show that Coast Runner was launched shortly after Defense Distributed lost its challenge to AB 1621.  In a post on its now-shuttered Kickstarter page, Coast Runner claimed that it conceived of the device in October 2022—the same month the federal court rejected Defense Distributed's challenge to AB 1621—and that it developed the first prototype of the Coast Runner by February 2023.[20]

29.    On or about February 3, 2023, Coast Runner Industries Inc. was incorporated in Texas.  By February 7, 2023, Coast Runner had launched its website and begun advertising and marketing its product.

30.    From its founding, Coast Runner Industries, Inc. has been a mere alter ego of Ghost Gunner, Inc. and Defense Distributed.  When the company was incorporated, Coast Runner Industries, Inc.'s registered agent was Garret Walliman, a senior employee of Defense Distributed and the lead product designer of the Ghost Gunner.  Walliman is now identified in public records and marketing as the Director and Chief Technology Officer of Coast Runner Industries, Inc.  In an April 2024 interview, Walliman also identified himself as the Chief Technology Officer of

---

[17]    *Id.* at 5.
[18]    *See supra* n.4.
[19]    *Id* at *5.
[20]    *Coast Runner CR-1: Titanium-Capable Desktop CNC*, KICKSTARTER, https://www.kickstarter.com/projects/coastrunnercnc/the-coast-runner-desktop-cnc-mill [https://perma.cc/TN3H-PBVN].

Defense Distributed and stated that he and Cody Wilson are operating "six or seven" businesses simultaneously.[21]  In the same interview, Walliman made clear the purpose and goal of his companies: "Just trying to make guns, man, that's all I want to do."[22]

31.    In addition, the certificate of formation for Coast Runner Industries, Inc. identifies "CR Wilson" as the organizer of Coast Runner Industries, Inc., and the address listed on the certificate of formation for the company is 1101 W 34th Street, #340, Austin, TX 78705.  Texas corporate filings for Defense Distributed list this address as the address for Cody Wilson in his role as principal of Defense Distributed.  Therefore, upon information and belief, Cody Wilson is the "CR Wilson" listed on Coast Runner Industries, Inc.'s certificate of formation.[23]

32.    Finally, social media posts from the two companies show that at least three of the same individuals who previously promoted the Ghost Gunner are now promoting and selling the Coast Runner, including Coast Runner Industries, Inc. CEO Garret Walliman.  When Ghost Gunner attended the NRA's Annual Meeting in 2022, it posted the below picture of its team on Instagram, with the caption:  "The best part of being at a trade show; educating gun owners that technology + innovation is the key to pivoting around infringement."

---

[21]    *Interview with Garret Walliman*, JOHN CRUMP LIVE, (Apr. 11, 2024), https://twitter.com/i/broadcasts/1MnGnMgegAkKO.
[22]    *Id.*
[23]    Public record research indicates that Wilson's full name is Cody Rutledge Wilson.



**FIGURE 3:** Walliman, second from right.

33.    And on Coast Runner's now-shuttered Kickstarter page, Coast Runner included the below picture of its team, which again features Garret Walliman:



**FIGURE 4:** Walliman, second from left.

34.    From its inception, the Coast Runner was designed and marketed for the California market.  In 2023, Ghost Gunner and Defense Distributed marketed the Coast Runner as the

California-specific version of the Ghost Gunner 3. By February 14, 2023, Ghost Gunner's website included the following notice below the Ghost Gunner 3: "**Notice:** California residents ordering a Ghost Gunner CNC machine consent to receiving a Coast Runner CNC machine in lieu of a Ghost Gunner."[24] This notice remained on the Ghost Gunner page until at least August 2023.[25]

35.    By early 2024, Defendants had scrubbed references to the Coast Runner from Ghost Gunner's website. However, nearly identical notices continue to appear on other websites operated by Defendants. For example, the website for Zero Percent Arms, a company founded by Cody Wilson and operated by Defendants, allows users to place a nonrefundable $500 deposit to receive a Ghost Gunner 3 and to this day informs users that "California residents ordering a GG CNC machine consent to receiving a Coast Runner CNC machine in lieu of a GG."[26] The website "officialghostguns.com," which allows users to place a nonrefundable $500 deposit for a Ghost Gunner 3, similarly states that "California residents ordering a Ghost Gunner CNC machine consent to receiving a Coast Runner CNC machine in lieu of a Ghost Gunner."[27]

36.    Coast Runner's website also shows how the product is directed at the California market. When Coast Runner launched its Kickstarter project, the Terms and Conditions page for the Coast Runner provided that a user's "use of the Site and the Marketplace Offerings are governed by and construed in accordance with the laws of the State of California applicable to agreements made and to be entirely performed within the State of California, without regard to its conflict of law principles."[28] In addition, the Terms and Conditions included an arbitration provision that specifies that any arbitration under the Terms and Conditions "will take place in San Diego, California."[29] The Terms and Conditions also included a "California Users and Residents" rights section.[30]

---

[24]    *Ghost Gunner 3-S Deposit*, DEF. DISTRIBUTED, https://ghostgunner.net/product/ghost-gunner-3-deposit/ [https://web.archive.org/web/20230813065923/https://ghostgunner.net/product/ghost-gunner-3-deposit/].
[25]    *Id.*
[26]    *Ghost Gunner 3-S – Deposit*, ZERO PERCENT ARMS, https://zeropercentarms.com/product/ghost-gunner-3-deposit/ [https://perma.cc/2CXU-B5WT].
[27]    *GG3-S CNC Deposit*, OFFICIAL GHOST GUNS, https://officialghostguns.com/product/gg3-s-cnc-deposit/ [https://perma.cc/5KU8-Q4ND].
[28]    *Terms and Conditions*, COAST RUNNER,  [https://perma.cc/5BKE-X328].
[29]    *Id*.
[30]    *Id.*

37.    Beginning in early 2024, Coast Runner began an aggressive marketing campaign for the device. The Coast Runner had its own dedicated booth at SHOT Show 2024. SHOT Show is an annual firearms industry conference hosted by the National Shooting Sports Foundation ("NSSF"). "For all intents and purposes, the NSSF is the gun industry," as "[e]very notable firearm company and retailer is an NSSF member."[31]

38.    Marketing materials for SHOT Show 2024 identified the true purpose and design of the Coast Runner. The official SHOT Show 2024 guide included the following description of Coast Runner:

> Introducing Coast Runner: Revolutionizing Small-Scale Manufacturing and Gunsmithing. Our cutting-edge CNC mill empowers small manufacturers and gunsmiths with advanced capabilities. Experience effortless machining of a wide range of materials, including harder metals like steel. With Coast Runner, unleash unparalleled precision and take your manufacturing to new heights. Embrace our innovative technology and transform your production process with ease.[32]

39.    Coast Runner's booth at SHOT Show 2024 was located on the "Supplier Showcase" floor of the convention. Neighboring booths included manufacturers of ammunition, magazine components, and firearms components.

40.    Based on a review of SHOT Show's social media accounts, the Coast Runner was also featured at the "New Product Center," a special display section described as providing "a stockpile of insights into new firearms and accessories hitting the market." On January 25, 2024, the third day of SHOT Show 2024, SHOT Show's social media accounts highlighted the "Top Scanned Products" of the event. The Coast Runner featured as one of the top three "hottest new products" at the show.[33]

---

[31]    Ryan Busse, *Meet the NSSF: the New Face of the Gun Lobby*, GIFFORDS (Aug. 11, 2022), https://giffords.org/blog/2022/08/meet-the-nssf-the-new-face-of-the-gun-lobby/ [https://perma.cc/A3H3-4WBG].
[32]    *Coast Runner CNC*, SHOT SHOW PLANNER, https://n1b.goexposoftware.com/events/ss24/goExpo/exhibitor/viewExhibitorProfile.php?__id=3 496 [https://perma.cc/ZYZ7-AUWD].
[33]    SHOT Show, *New Product Center - Top Scanned Products | SHOT Show 2024*, YOUTUBE (Jan. 25, 2024), https://www.youtube.com/watch?v=YNPHbIG8ou4.

41.     Coast Runner's Website Terms of Use indicates that Defendants understand they are selling a firearm-related product.  The "Prohibited Uses" section of the Website Terms of Use states that, by using Coast Runner's website:

**You further represent and warrant that each of the following are true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:**

- You are a citizen or lawful permanent resident of the United States of America, or of any other country in which the operation of this site is lawful
- You have not renounced your U.S. citizenship
- You are not an illegal or unlawful alien, and are not a nonimmigrant alien
- Your possession and/or use of the products available through this site does not violate any local, state, or federal law of the jurisdiction in which you reside
- You are not currently under indictment for, and have never been convicted in any court of, a crime punishable by imprisonment for one year or more
- You are not a fugitive from justice
- You are not an unlawful user of, or addicted to, any controlled substance
- You have not been adjudicated as a mental defective and have not been committed to any mental institution
- You have never been and are not expected to be discharged from the Armed Forces under dishonorable conditions
- You are not currently subject to a domestic violence restraining order of any kind
- You have never been convicted in any court of a crime of domestic violence[34]

These conditions match the list of persons prohibited from possessing firearms under the federal Gun Control Act, as set forth in 18 U.S.C. § 922(g).

42.     By examining the internal designs of the devices, it becomes even clearer that the Coast Runner is identical to the Ghost Gunner 3.  Both the Ghost Gunner and the Coast Runner come with user manuals that provide diagrams and technical information on the products.

43.     Shown in Figure 5 below is the Physical Overview diagram of the Ghost Gunner 3 contained in the Ghost Gunner 3 Operator's Manual:[35]

---

[34] *Website Terms of Use*, COAST RUNNER, https://coastrunner.net/website-terms-of-use/ [https://perma.cc/5BSU-HH5U].

[35] DEFENSE DISTRIBUTED, GHOST GUNNER 3 OPERATOR'S MANUAL at 9, https://github.com/Defdist/Manuals/raw/main/GG3/LATEST_GG3-Operators-Manual.pdf [https://perma.cc/AJK9-74DE].



**FIGURE 5:** Physical Overview diagram of the Ghost Gunner 3.

44. Figure 6 is the Physical Overview diagram of the Coast Runner contained in the Coast Runner Operator's Manual at the time Coast Runner launched its Kickstarter:[36]

---

[36] COAST RUNNER INDUSTRIES, INC., COAST RUNNER OPERATOR'S MANUAL at 7, https://coastrunner.net/wp-content/uploads/2023/07/Coast-Runner-Operators-Manual.pdf [https://perma.cc/R286-MJ5T].

COMPL. FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES



**FIGURE 6:** Physical Overview diagram of the Coast Runner.

45. Both diagrams highlight the same five key components and use identical language to describe these key components. Both share the same identical key parts, with identical descriptions for each component.

46. In perhaps the most revealing oversight, one description in the Coast Runner's Physical Overview diagram refers to the Coast Runner *as the Ghost Gunner*, using the initials "GG." When describing the Emergency Stop Switch, the Coast Runner manual states: "Emergency Stop Switch (E-stop) Immediately halts all motion when engaged. Engage the E-stop if you sense danger. *GG doesn't have a brain… but you do."* (emphasis added). It appears that in preparing the Coast Runner Operator's Manual, Defendants simply used a global find-and-replace function to replace "Ghost Gunner" with "Coast Runner" – but failed to catch this use of the initials "GG" for "Ghost Gunner."[37]

---

[37] Coast Runner has since uploaded a new version of its Operator's Manual that corrects this revealing oversight. However, the original Operator's Manual remains available on its

47.    In each of the Operator's Manuals, Appendix N provides the specifications for each of the devices.  The Coast Runner and the Ghost Gunner 3 share identical specifications, including identical weight, total cutting volume, total working volume, max acceleration, operating temperature, storage temperature, spindle cutting power, and spindle rotations-per-minute (RPM).

48.    Users across social media, including members of online firearms communities, have seen through the Coast Runner's facade and recognized from the outset that the Coast Runner is identical to the Ghost Gunner.  For example, in an October 2023 post on Reddit, in the r/GhostGunner subreddit, a user posted the following question:  "**Coast Runner?** Hey guys, Been eyeing the GG for some time and just found out about the Coast Runner (Cali resident). Can't seem to find much info on it though . . . . Does anyone have have [sic] insight into this?"[38]  The first reply responded, "[i]t's exactly the same accept [sic] the cover coating," to which another user facetiously responded, "I have no idea what you are talking about, definitely not for guns, it's for surf board fins bro."  In a follow-up post, another user explained that "[i]t's the exact same as the ghost gunner 3", while another user wrote, "I'll give you a hint, look up on google why the ghost gunner isn't allowed to be sold in California and tell me what you see different between this product and the GG3."[39]

49.    Even after its 2024 relaunch, users have continued to recognize that the Coast Runner is the same as the Ghost Gunner.  In a January 2024 TikTok video from FreeThink Media highlighting the Coast Runner, one user commented "it's literally just a ghost gunner," to which another user replied, "Coast Runner sounds an awful lot like Ghost Gunner doesn't it."[40]  On a January 2024 post from Coast Runner on its TikTok page, a user commented, "[l]ooks like a Ghost

---

website at https://coastrunner.net/wp-content/uploads/2023/07/Coast-Runner-Operators-Manual.pdf [https://perma.cc/R286-MJ5T].

[38]    REDDIT, "Coast runner?", https://www.reddit.com/r/GhostGunner/comments/16mi4lh/coast_runner/ [https://perma.cc/7X79-3LJ3].

[39]    *Id.*

[40]    Freethink (@freethinkmedia), TIKTOK (Jan. 11, 2024), https://www.tiktok.com/@freethinkmedia/video/7322975778986085674 [https://perma.cc/LZS4-X8QM].

1    gunner imo," to which a different user replied, "[n]otice that it rhymes…," while another replied

2    "[i]t's made by the same company… the name is changed to get around the state ban."[41]

3        50.    Most recently, in a April 2024 post on Reddit, a user posted the following

4    question: "**Coast runner CR-1** Has anyone looked into the Coast runner?"[42]  The first reply

5    responded, "The base model is just a rebranded GhostGunner, made by the same people even,

6    and intended to sell in non-permissive areas."[43]  Another user added, "It is illegal to sell a CNC

7    machine in California if it is [sic] purpose build to make guns. This is the Ghost Gunner but

8    marketed towards not guns so it can be sold in California.  It even says on the GG website that if

9    you try to buy the GG from California you will automatically be switched to purchasing a Coast

10   Runner."[44]

11       51.    As shown in Figure 7 below, in a post on the r/Gunmemes subreddit, users mocked

12   the obvious rebranding of the Ghost Gunner to the Coast Runner with the heading: "Hey, can I

13   copy your homework? Sure just change it up a bit so it's not obvious you've copied.":[45]

---

24   [41]    Coast Runner (@coast.runnercnc), TɪᴋTᴏᴋ (Jan. 4, 2024),

25   https://www.tiktok.com/@coast.runnercnc/video/7320374200538058027
     [https://perma.cc/GA8X-Y7CY].

     [42]    Rᴇᴅᴅɪᴛ, https://www.reddit.com/r/fosscad/comments/1c8tvsq/coast_runner

26   _cr1/?share_id=vcNqKb-WkL9IjdveMiNCl&utm_content=1&utm_medium=ios_app&utm_nam
     e=ioscss&utm_source=share&utm_term=1 [https://perma.cc/8C8D-7NTZ].

27   [43]    *Id.*
     [44]    *Id.*

28   [45]    Rᴇᴅᴅɪᴛ, https://www.reddit.com/r/GunMemes/comments/1b34nuf/
     hey_can_i_copy_your_homework_sure_just_change_it/ [https://perma.cc/P5AW-9SR9].



**FIGURE 7:** Post on the r/Gunmemes subreddit.

52.     Defendants are currently selling the Coast Runner using a "deposit model" in which customers pay 10% of the full price of the machine "to secure their spot in line."[46]  Coast Runner's website states that the "official ship date" for the Coast Runner machines is September 2024. However, the website also states that Defendants are planning to ship certain "early access" machines imminently, and may have even begun shipping these early access machines in April 2024.[47]

53.     To fund the production of the Coast Runner, Defendants first turned to the crowdfunding website Kickstarter, where they offered a variety of limited-time promotions allowing users to place orders for the Coast Runner machines at a discounted price.[48]  This initial campaign raised a total of $542,123.[49]  But after just a few days on the website, in early March

---

[46]     COAST RUNNER INDUSTRIES, INC., *Coast Runner Direct Funding and Early Access* (March 6, 2024), https://coastrunner.net/coast-runner-direct-funding-and-early-access/ [https://perma.cc/5CL3-43GT].
[47]     *Id.*
[48]     KICKSTARTER, *Coast Runner CR-1: Titanium-Capable Desktop CNC (Suspended)*, https://www.kickstarter.com/projects/coastrunnercnc/the-coast-runner-desktop-cnc-mill/rewards [https://perma.cc/TN3H-PBVN].
[49]     *Id.*

2024, Kickstarter suspended the Coast Runner campaign.  A statement from Kickstarter to the media explained the decision, noting that Kickstarter found "a number of rule violations" for the Coast Runner project, including that it "*replicates a CNC machine used in connection with heavily regulated and banned items*" and that the Coast Runner's creators did not "present [the] project[] clearly and honestly."[50]

54.    Defendants then relaunched the Coast Runner on another crowdfunding website, IndieGoGo.[51]  That campaign has now also been suspended.[52]

### a.    Ghost Guns:  Regulation and Harm

55.    Ghost guns such as the ones that can be manufactured using the Coast Runner are fueling an epidemic of gun violence across the country.

56.    Nationwide, the number of ghost guns recovered at crime scenes has increased more than elevenfold in just five years, from 1,758 in 2016 to 19,344 in 2021.[53]  And in California, while 26 ghost guns were recovered in connection with criminal activity in 2015, by 2022 that number had risen to 12,894.  According to local and federal law enforcement officials in Los Angeles, Oakland, San Diego, and San Francisco, in 2020 and 2021, ghost guns accounted for 25 to 50 percent of firearms recovered at crime scenes.[54]

57.    These numbers likely significantly underestimate the actual number of ghost guns recovered from crime scenes because many law enforcement agencies do or did not accurately record or trace their recoveries.[55]  And they grossly undercount the number of ghost guns that are

---

[50]    Matthew Mensley, *Coast Runner Kickstarter Campaign Terminated, Relaunches on IndieGoGo*, All3DP (Mar. 1, 2024), https://all3dp.com/4/coast-runner-kickstarter-campaign-terminated-relaunches-on-indiegogo/ [https://perma.cc/HFU4-UD8R] (emphasis added).
[51]    *Id.*
[52]    INDIEGOGO, *Coast Runner CR-1:  Titanium-Capable Desktop CNC*, https://www.indiegogo.com/projects/coast-runner-cr-1-titanium-capable-desktop-cnc#/ [https://perma.cc/JLP6-WFUJ ].
[53]    Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, (Aug. 26, 2022), https://www.federalregister.gov/documents/2022/04/26/2022-08026/definition-of-frame-or-receiver-andidentification-of-firearms [https://perma.cc/DAP7-B446].
[54]    Glenn Trush, *'Ghost Guns':  Firearm Kits Bought Online Fuel Epidemic of Violence*, N.Y. TIMES (Nov. 14, 2021), https://www.nytimes.com/2021/11/14/us/ghost-guns-homemade-firearms.html [https://perma.cc/4NQR-H54U].
[55]    Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, (Aug. 26, 2022), https://www.federalregister.gov/documents/2022/04/26/2022-08026/definition-of-frame-or-receiver-andidentification-of-firearms [https://perma.cc/9YDL-SK8R].

in circulation on the streets—including many which likely have been used in crimes—because they only represent the number of guns recovered at crime scenes and accurately logged by law enforcement.

58.     Ghost guns pose an imminent danger to the people of California precisely because they are untraceable and largely unregulated.  To name just one example, in 2013, a gunman murdered five people in Santa Monica, California with an unserialized assault rifle he assembled from gun parts purchased online.[56]  According to news reports, the gunman had failed a background check attempting to purchase a firearm from a licensed dealer in California before building his do-it-yourself assault rifle.[57]  And in 2019, a 16-year-old—who would have been too young to purchase a gun legally—used a ghost gun to kill two students and injure three others at Saugus High School in Santa Clarita, California.[58]

59.     More recently, in 2023, federal authorities arrested a man in San Francisco for manufacturing ghost guns with a milling machine and selling them to clients, including local drug dealers.[59]  And in San Diego, a father was arrested after his 14-year-old son threatened to shoot up his high school.[60]  Authorities found several ghost guns, along with 29 assault rifles, a rocket-propelled grenade, and a flamethrower in the family's home.[61]

---

[56]     Andrew Blankstein & Eric Leonard, *Ex-con Who Killed California Cop Used Homemade 'Ghost Gun'*, NBC NEWS (Aug. 15, 2019), https://www.nbcnews.com/news/crime-courts/ex-con-who-killed-california-cop-used-homemade-ghost-gun-n1042811 [https://perma.cc/2KHV-LY37].

[57]      Josiah Bates, *The Saugus High School Shooter Used an Illegal 'Ghost Gun.' Authorities Warn More Criminals Are Using Untraceable Weapons to Get Around Gun Laws*, TIME (Nov. 23, 2019), https://time.com/5737227/saugus-shooter-ghost-gun/ [https://perma.cc/9MQ2-NKRH].

[58]     Dakin Andone, *The Gunman in the Saugus High School Shooting Used a 'Ghost Gun,' Sheriff Says*, CNN (Nov. 21, 2019), https://www.cnn.com/2019/11/21/us/saugus-shooting-ghost-gun/index.html [https://perma.cc/8JPZ-XFA8].

[59]     Jonah Owen Lamb, *He Beat Addiction and Homelessness to Become an IT Tech.  Then He Started Making Ghost Guns*, THE SAN FRANCISCO STANDARD (Jan. 2, 2024), https://sfstandard.com/2024/01/02/san-francisco-catalytic-converter-theft-ghost-gun/ [https://perma.cc/QN2U-HA4C].

[60]     Alexis Rivas and Eric S. Page, *An Arsenal:  Rancho Bernardo Dad Had Flame Throwers, 29 Assault Rifles, Says Prosecutor*, NBC 7 SAN DIEGO (Feb. 1, 2024), https://www.nbcsandiego.com/news/local/an-arsenal-rancho-bernardo-dad-had-flame-throwers-29-assault-rifles-says-prosecutor/3422509/ [https://perma.cc/PK7W-A5UW].

[61]     *Id.*

60.     Recognizing the threat posed by ghost guns, in October 2021, the City of San Diego passed an ordinance prohibiting the possession and sale of ghost guns.[62]  In January 2022, the County of San Diego followed suit and passed a similar ordinance prohibiting the possession and sale of ghost guns within the county.[63]

61.     On June 30, 2022, Governor Newsom signed AB 1621, a bill that aimed to curb the proliferation of ghost guns by revising state regulations regarding firearm "precursor parts," or components that may be readily assembled to be used as a functional ghost gun.  AB 1621 established several provisions of law prohibiting any entity except for a federally licensed firearms manufacturer or importer from selling, offering to sell, transferring, advertising, or marketing CNC milling machines that have the "sole or primary function of manufacturing firearms."  Cal. Penal Code § 29185(a)-(c).  According to its author, Assemblymember Mike Gipson, "AB 1621 seeks to eradicate ghost guns from our streets, and this effort is nothing short of a lifesaving, common sense approach toward providing justice for families who have continued to bear the burden of losing a loved one through incidents that could have otherwise been prevented . . . this is wholeheartedly about saving lives, and nothing less."[64]

62.     A few months later, on September 26, 2022, Governor Newsom signed AB 1089, which builds on the provisions of AB 1621 by creating two civil causes of action relating to CNC milling machines.  The first, added to the California Civil Code as section 3273.60, is directed against a person who either knowingly distributes or causes to be distributed a digital firearm manufacturing code.  Cal. Civ. Code § 3273.61(a)(1).  The second cause of action, added to the California Civil Code as section 3273.62, is directed against a person who sells, offers to sell, transfers, advertises, or markets a CNC milling machine that knowingly or recklessly causes another person to engage in conduct that is illegal under Penal Code 29185.  Cal. Civ. Code § 3273.62(a).  Such conduct includes the use, sale, offer to sell, or transfer of a CNC milling

---

[62]   *City of San Diego's 'Ghost Gun' Ban Now in Effect*, NBC 7 SAN DIEGO (Oct. 23, 2021), https://www.nbcsandiego.com/news/local/city-of-san-diegos-ghost-gun-ban-now-in-effect/2760770/ [https://perma.cc/V4WB-2VXP].
[63]   *San Diego County Officially Bans 'Ghost Guns'*, NBC 7 SAN DIEGO (Jan. 25, 2022), https://www.nbcsandiego.com/news/local/san-diego-county-officially-bans-ghost-guns/2848675/ [https://perma.cc/JQ7W-YDW3].
[64]   California Bill Analysis, A.B. 1621 Assem., 6/22/2022.

machine, or the possession, purchase, or receiving of such a machine whose sole or primary function is to manufacture firearms by a person who is not a state-licensed firearms manufacturer. Cal. Penal Code § 29185.  A claim under either of the two causes of action may be brought in a court of competent jurisdiction by the Attorney General, a county counsel, or a city attorney, who can seek injunctive relief to prevent further violations of the law as well as a civil penalty of up to $25,000 for each violation.  *Id.* §§ 3273.61(c), 3273.62(c)-(d).

63.    As Assemblymember Gipson emphasized, "Assembly Bill 1089 seeks to build on California's recently enacted ghost gun reforms by closing additional gaps and creating a civil cause of action to assist in accountability and enforcement against companies whose sale or advertising practices unfairly and deceptively induce California buyers to illegally obtain and use ghost gun manufacturing machines without a manufacturer's license."[65]

## V.    **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION**

### **Violation of California Civil Code § 3273.62**

### **Against All Defendants**

64.    The People hereby incorporate by reference the allegations set forth in paragraphs 1 through 63, as if fully set forth herein.

65.    Under California Civil Code § 3273.62(a), a "person shall not sell, offer to sell, transfer, advertise, or market a CNC milling machine or three-dimensional printer in a manner that knowingly or recklessly causes another person in this state to engage in conduct prohibited by Section 29185 of the Penal Code, or in a manner that otherwise knowingly or recklessly aids, abets, promotes, or facilitates conduct prohibited by that section."  California Penal Code § 29185 makes it unlawful for anyone, other than a state-licensed manufacturer, to "use a computer numerical control (CNC) milling machine or three-dimensional printer to manufacture a firearm."

66.    Under California Civil Code § 3273.62(b), there is a rebuttable presumption that a person has violated these provisions if "(1) [t]he person offers to sell, advertises, or markets a CNC milling machine or three-dimensional printer in a manner that, under the totality of the

---

[65]    California Bill Analysis, A.B. 1089 Assem., 9/1/2023.

circumstances, is targeted at purchasers seeking to manufacture firearms or that otherwise affirmatively promotes the machine or printer's utility in manufacturing firearms, regardless of whether the machine or printer is otherwise described or classified as having any other capabilities" and "(2) [t]he person sells or transfers the CNC milling machine or three-dimensional printer . . . without verifying that a purchaser or transferee in this state is a federally licensed firearms manufacturer or not otherwise prohibited from purchasing or using the machine or printer to manufacture firearms."

67.     Defendants have violated and continue to violate California Civil Code § 3273.62(a) because they sell, offer to sell, transfer, advertise, or market the Coast Runner in California in a manner that knowingly and recklessly causes their customers to violate California Penal Code § 29185.

68.     As described above, the Coast Runner is identical in everything but name to the Ghost Gunner, a CNC milling machine that is designed specifically to allow users to manufacture their own ghost guns.  The Coast Runner and the Ghost Gunner share the exact same technical specifications, and the Coast Runner's Physical Overview diagram even refers to the Coast Runner as the Ghost Gunner, using the initials "GG."

69.     Defendants market and sell the Coast Runner knowing full well that it can be—and in fact is intended to be—used to manufacture firearms.  As described above, a website operated by Defendants even allows users to place a nonrefundable $500 deposit to receive a Ghost Gunner 3 and explains that "*California residents ordering a GG CNC machine consent to receiving a Coast Runner CNC machine in lieu of a GG*."  Defendants thus market and sell the Coast Runner knowing that users can and will manufacture firearms with the machine, in clear violation of California Penal Code § 29185.

70.     Furthermore, Defendants have advertised, marketed, and offered to sell the Coast Runner in a manner that, under the totality of the circumstances, is targeted at purchasers seeking to manufacture firearms and that otherwise affirmatively promotes the Coast Runner's utility in manufacturing firearms.

71.     As just one example, Defendants brazenly marketed the Coast Runner as "one of the hottest new products" in the firearms industry at SHOT Show 2024, the largest annual gathering in the firearms community.  Thus, Defendants have clearly targeted purchasers seeking to manufacture their own guns.  Moreover, Defendants have promoted the Coast Runner's utility in manufacturing firearms because Defendant's own description for the Coast Runner at SHOT Show 2024 explicitly describes the product as "Revolutionizing Small-Scale Manufacturing ***and Gunsmithing***" and "empower[ing] small manufacturers ***and gunsmiths*** with advanced capabilities."

72.     Defendants also sell the Coast Runner without verifying that purchasers are federally licensed firearms dealers or are not otherwise prohibited from purchasing or using the Coast Runner to manufacture firearms.

73.     Because Defendants' conduct meets the conditions set forth in California Civil Code § 3273.62(b), Defendants should be presumed to have violated California Civil Code § 3273.62(a).

74.     Each day that Defendants have advertised and marketed the Coast Runner constitutes its own independent violation of California Civil Code § 3273.62(a).  At a minimum, Defendants have violated § 3273.62(a) from January 25, 2024, up to and including the day of the filing of this complaint, for a total of 98 violations.

## SECOND CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17200 et seq.

### Against All Defendants

75.     Plaintiff hereby incorporates by references the allegations set forth in paragraphs 1 through 74, as if fully set forth herein.

76.     The foregoing acts and conduct of Defendants constitute deceptive business practices that are both unlawful and unfair under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

77.     Business and Professions Code section 17206 imposes civil liability of not more than $2,500 for each violation for any act of unfair competition, as defined in Business and Professions Code section 17200.

78.     Defendants engaged in, and continue to engage in, unlawful business practices in violation of the UCL through their violations of AB 1089 and AB 1621.  Under California law, an "unlawful" business practice includes anything that can properly be called a business practice and is forbidden by law.

79.     *First*, as alleged above, Defendants have violated and continue to violate AB 1089 because they sell, offer to sell, transfer, advertise, or market the Coast Runner in California in a manner that is targeted at purchasers seeking to manufacture firearms.

80.     *Second*, as alleged above, Defendants have violated and continue to violate AB 1621 because they routinely use, sell, offer to sell, and possess the Coast Runner in the course of their business transactions.  As the marketing materials and physical specifications for the Coast Runner, along with Defendants' own statements about the Coast Runner, demonstrate, the Coast Runner is a CNC milling machine designed with "the sole or primary function of manufacturing firearms."

81.     Defendants have also engaged in, and continue to engage in, unfair business practices in violation of the UCL by undermining the policy animating AB 1089 and AB 1621 in a manner that harms the public.  The legislature enacted these statutes with the specific goal of clamping down on ghost gun manufacturing machines. As the legislature recognized, these machines pose a unique danger to the people of California because they contribute to the proliferation of untraceable ghost guns.

82.     Defendants seek to evade AB 1089 and AB 1621 by selling their "Coast Runner" machine—identical in all but name to the "Ghost Gunner"—in California.  Notably, Defendants only began marketing the Coast Runner after they lost their legal challenge to AB 1621 in California.  Defendants' attempted end-run around the California legislature's clear intent to prohibit the sale of dangerous CNC milling machines in the state is an unfair business practice and should not be permitted here.

1    83.    As a direct and proximate result of Defendants' unfair and unlawful conduct,
2 Plaintiff has been harmed and Defendants have been unjustly enriched, for which restitution and/or
3 disgorgement is appropriate.

4    84.    As a direct and proximate result of Defendants' unfair and unlawful conduct,
5 Plaintiff is entitled to recover all proceeds received by Defendants arising from their sale and
6 marketing of the Coast Runner.

7    85.    Defendants' conduct is causing and, unless enjoined and restrained by this Court,
8 will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or
9 measured in money. Plaintiff has no adequate remedy at law to compensate for this ongoing harm.
10 Plaintiff is entitled to preliminary and permanent injunctions prohibiting the sale of Defendants'
11 illegal Coast Runner.

12    86.    Each day that Defendants have advertised and marketed the Coast Runner also
13 constitutes its own independent violation of Cal. Bus. & Prof. Code § 17200.

## VI.    PRAYER FOR RELIEF

The People seek a judgment from this Court:

A.    Finding Defendants' actions unlawful under California Civil Code § 3273.62(a);

B.    Ordering Defendants to stop violating California Civil Code § 3273.62(a);

C.    Awarding the People a civil penalty not to exceed $25,000 for each violation of California Civil Code § 3273.62(a);

D.    Awarding the People a civil penalty not to exceed $2,500 for each violation of Cal. Bus. & Prof. Code § 17200 et seq.;

E.    Awarding the People reasonable damages to remedy the harms it has suffered;

F.    Awarding the People costs and attorneys' fees; and

G.    Awarding any other relief the Court deems just and proper.

Dated: May 2, 2024                    CLAUDIA G. SILVA, County Counsel

By: JOHN P. COOLEY, Chief Deputy
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469

-28-

SULLIVAN & CROMWELL LLP

1

Telephone:    (619) 531-4860
Facsimile:    (619) 531-6005
E-mail: john.cooley@sdcounty.ca.gov

2

3

ROBERT A. SACKS (SBN 150146)
E-mail:  sacksr@sullcrom.com
ALEXA M. COVER (SBN 317068)
E-mail:  covera@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

4

5

6

7

8

LEONID TRAPS (*pro hac vice* forthcoming)
E-mail:  trapsl@sullcrom.com
SOPHIE A. KIVETT (*pro hac vice* forthcoming)
E-mail:  kivetts@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

9

10

11

12

13

ESTHER SANCHEZ-GOMEZ (SBN 330408)
E-mail:  esanchezgomez@giffords.org
GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE
268 Bush St. # 555
San Francisco, CA 94104
Telephone:    (415) 433-2062
Facsimile:    (415) 433-3357

14

15

16

17

18

WILLIAM T. CLARK  (*pro hac vice* forthcoming)
E-mail: wclark@giffords.org
GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE
244 Madison Ave, Ste 147
New York, NY 10016
Telephone:    (415) 433-2062
Facsimile:    (415) 433-3357

19

20

21

22

*Attorneys for Plaintiff, THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the County of San Diego*

23

24

25

26

27

28

SULLIVAN & CROMWELL LLP

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>John P. Cooley, SBN 162955, Office of County Counsel, County of San Diego<br>1600 Pacific Highway, Room 355, San Diego, California 92101 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (619) 531-4860     FAX NO. : (619) 531-6005<br>EMAIL ADDRESS: john.cooley@sdcounty.ca.gov<br>ATTORNEY FOR *(Name)*: The People of the State of California | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**05/03/2024** at 12:02:36 PM<br><br>Clerk of the Superior Court<br>By Eva Noriega, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice (Central Division)

CASE NAME:
The People of the State of Cal. v. Coast Runner, Inc., Ghost Gunner, Inc., and Defense Distributed

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited  [ ] Limited<br>(Amount     (Amount<br>demanded   demanded is<br>exceeds $35,000)  $35,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2024-00020896-CU-MC-CTL<br><br>JUDGE: Judge Loren G. Freestone<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: Two
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 05/02/2024
John P. Cooley

_____
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition