UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COAST RUNNER INDUSTRIES, INC., GHOST GUNNER, INC., and DEFENSE DISTRIBUTED,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 24-cv-00971-AJB-SBC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**(Doc. No. 10)** |

Before the Court is Plaintiff the People of the State of California's ("Plaintiff" or "the People") motion to remand. (Doc. No. 10.) The motion is fully briefed. (*See* Doc. Nos. 10, 16, 17.) The Court, pursuant to its discretion under Civil Local Rule 7.1.d.1, determines the matter is suitable for resolution without need for oral argument, submits the motion on the parties' papers, and vacates the hearing. For the following reasons, the Court **GRANTS** Plaintiff's motion to remand.

/ / /

/ / /

/ / /

/ / /

1

## I.   BACKGROUND[1]

Defendants Ghost Gunner Inc., Coast Runner Industries, Inc., and Defense Distributed (collectively, "Defendants") are Texas corporations that sell products that allow individuals to manufacture un-serialized, untraceable, firearms, or "ghost guns." (Doc. No. 1-8, "Compl.", ¶¶ 1–2, 10–13, 25.) One of Defense Distributed's products is a computer numerical control ("CNC") milling machine called the "Ghost Gunner." (*Id.* ¶ 2.) Ghost Gunner Inc.'s website states, "The Ghost Gunner 3 aims to allow individuals to manufacture their own un-serialized firearms. Un-serialized firearms are untraceable. Hence, the 'ghost gun' name." (*Id.* ¶ 2.) The product supports "a growing library of firearms patterns, including the AR-15, AR-308, 1911, and Polymer80 frames." (*Id.*)

Plaintiff alleges that Coast Runner Industries, Inc. is an alter ego of Ghost Gunner and Defense Distributed. (*Id.* ¶¶ 6, 30.) Plaintiff contends that the "Coast Runner" product is identical to the Ghost Runner 3, (*id.* ¶ 42), and was "designed and marketed for the California market," (*id.* ¶ 34). By February 14, 2023, Ghost Gunner Inc.'s website included the following: "Notice: California residents ordering a Ghost Gunner CNC machine consent to receiving a Coast Runner CNC machine in lieu of a Ghost Gunner." (*Id.* ¶ 34.) Plaintiff alleges that Defendants seek to evade California regulations that prohibit the use, sale, or transfer of CNC milling machines that have the "sole or primary function of manufacturing firearms," by selling the "Coast Runner" machine to California residents. (*Id.* ¶¶ 61, 62, 82 (citing Cal. Pen. Code § 29185(b); Cal. Civ. Code § 3273.62(a)–(b)).)

Ghost guns pose an imminent danger to the people of California precisely because they are untraceable and largely unregulated—purchasers of Defendants' CNC milling machines can evade age requirements, background checks, and other regulations governing the purchase of firearms from state-licensed firearms manufacturers. (*Id.* ¶ 58.) Plaintiff

---

[1]   The following facts are taken from Plaintiff's Complaint, which the Court construes as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

further alleges that the number of ghost guns recovered in connection with criminal activity in California has increased from 26 ghost guns recovered in 2015, to 12,894 ghost guns recovered in 2022. (*Id.* ¶ 56.) Local and federal law enforcement in Los Angeles, Oakland, San Diego, and San Francisco reported that in 2020 and 2021, ghost guns accounted for 25 to 50 percent of firearms recovered at crime scenes. (*Id.*) These figures represent only the recorded number of ghost guns recovered from crime scenes—Plaintiff asserts that the number of ghost guns in circulation is much higher. (*Id.* ¶ 57.)

On May 3, 2024, Plaintiff filed a complaint in San Diego County Superior Court. (Doc. No. 1-8.) Plaintiff, by and through the Office of County Counsel for the County of San Diego, brought the action against Defendants. (Compl. at 3.) Defendants are Texas corporations and Coast Runner's and Ghost Gunner's principal places of business are in Austin, Texas. (Doc. No. 1, "Removal Notice," at 2; Compl. ¶¶ 11–13.) Plaintiff asserts two causes of action against Defendants: (1) violation of California Civil Code § 3273.62, prohibiting a person who sells, offers to sell, transfers, advertises, or markets a CNC milling machine from knowingly or recklessly causing another person to engage in conduct that is illegal under Penal Code 29185, which proscribes anyone, other than a state licensed manufacturer, to "use a [CNC] milling machine or three-dimensional printer to manufacture a firearm"; and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). (Compl. ¶¶ 64–86.)

On June 3, 2024, Defendants timely removed the case to federal court under diversity jurisdiction. (Doc. No. 1.) Defendants also filed a motion to change venue, (Doc. No. 5), and motion dismiss for lack of jurisdiction, (Doc. No. 6). On June 18, 2024, Plaintiff filed the instant motion to remand, arguing that Defendants failed to satisfy their burden that diversity jurisdiction exists, and that removal is proper. (Doc. No. 10.)[2] This Order follows.

/ / /

/ / /

---

[2] On June 25, 2024, the Court stayed briefing on Defendants' motion to transfer, (Doc. No. 5), and motion to dismiss, (Doc. No. 6), pending resolution of Plaintiff's motion to remand. (Doc. No. 13.)

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction and, as such, cannot exercise jurisdiction without constitutional and statutory authorization." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citations omitted). "A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." *Allen v. Boeing Co.*, 784 F.3d 625, 628 (9th Cir. 2015) (citing 28 U.S.C. § 1441(a)); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C § 1331, or diversity of citizenship under 28 U.S.C § 1332. For a federal court to exercise diversity jurisdiction, there must be "complete diversity" between the parties and the amount in controversy must exceed the $75,000 threshold. *See* 28 U.S.C. § 1332(a).

There is a strong presumption against removal jurisdiction, and courts strictly construe the removal statute against removal jurisdiction. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). "The removing defendant bears the burden of overcoming the strong presumption against removal jurisdiction." *Hansen*, 902 F.3d at 1057 (internal quotation marks and citations omitted); *see also Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists."). "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

## III.     DISCUSSION

The parties dispute whether complete diversity of citizenship exists where Plaintiff represents the People of the State of California and Defendants are citizens of Texas. Plaintiff argues that this Court lacks jurisdiction because the People of the State of California is the real party in interest and there can be no diversity jurisdiction where the state is the party. (Doc. No. 10-1, "Pl.'s Mot.", at 5–10.) Defendants contend that California is not the real party in interest, but rather the real plaintiff in interest is Giffords Law Center to Prevent Gun Violence (the "Giffords Law Center"), which is a citizen of the State of

California, so complete diversity exists. (Doc. No. 16, "Opp'n", at 4–5.) The Parties do not dispute that the amount of controversy exceeds the $75,000 threshold. (*See generally* Removal Notice; Pl.'s Mot.; Opp'n at 4.)

### A. Diversity of Citizenship

"Diversity is generally determined from the face of the complaint." *Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 773 (9th Cir. 1986) (citing *Miller v. Grgurich*, 762 F.2d 372, 373 (9th Cir. 1985)). Here, Plaintiff identifies "the People of the State of California" as plaintiff. (Compl. ¶ 10.) "The 'People of the State' and 'The State' are descriptive of the same sovereignty." *California by & through Los Angeles City Att'y v. Monsanto Co.*, No. 222CV02399ODWSKX, 2022 WL 2355195, at *2 (C.D. Cal. June 30, 2022) (quoting *People By & Through Dep't of Pub. Works v. Glen Arms Est., Inc.*, 230 Cal. App. 2d 841, 854 (Ct. App. 1964)). "For the purposes of diversity jurisdiction, a State is not a citizen of itself." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) (internal quotation marks and citation omitted). Accordingly, "neither a state nor a state agency could be a party to a diversity action." *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 669 (9th Cir. 2012) ("Nevada is not a citizen for purposes of diversity analysis.") (citing *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003) ("[T]here is no question that a State is not a 'citizen' for purposes of diversity jurisdiction.")). However, "the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy." *Ex parte Nebraska*, 209 U.S. 436, 444 (1908). Therefore, to determine whether the state of California is a real party in interest, the Court must "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Monsanto Co.*, 2022 WL 2355195, at *2 (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014)).

///

///

B.     **Real Party in Interest**

Plaintiff argues, and Defendants do not dispute, that if California is the real party in interest, diversity of citizenship does not exist. (Pl.'s Mot. at 7–10; Opp'n at 8 n.1.) Rather, Defendants assert that the real plaintiff in interest is not California, but the Giffords Law Center. (Removal Notice at 2; Opp'n at 8–10.)

The parties agree that the test to determine "whether or not the state is the real party in interest" is to examine "the essential nature and effect of the proceeding as it appears from the entire record." (Pl.'s Mot. at 8 (quoting *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011)); Opp'n at 8.) In other words, the Court will "look[] at the case as a whole to determine the real party in interest[.]" *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012). To do so, the Ninth Circuit instructs courts to consider whether the State has a specific and concrete interest in the case, as opposed to only a general one, and the extent to which the State has a "substantial interest" in the relief sought. *See e.g.*, *id.* at 670–71; *Lucent*, 642 F.3d at 738–40. "If the 'relief sought is that which inures to it alone,' the state may be a real party in interest." *California by & through L.A. City Att'y v. Monsanto Co.*, No. 222CV02399ODWSKX, 2022 WL 2355195, at *3 (C.D. Cal. June 30, 2022) (quoting *Lucent*, 642 F.3d at 740); *see also Nevada*, 672 F.3d at 672 (finding Nevada to be the real party in interest where Nevada sought "substantial relief that is available to it alone").

Two Ninth Circuit cases are instructive in determining whether the state is the real party in interest. In *Lucent,* the California Department of Fair Employment and Housing ("DFEH"), acting on behalf of the State of California, brought a wrongful termination action for Lucent Technologies, Inc.'s former employee. 642 F.3d 728. There, the Ninth Circuit held that California was not a real party in interest because California's interest in protecting all persons from employment discrimination was only a "very 'general governmental interest,'" *id.* at 738 (quoting *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 60 (1901)), and that most of the requested relief for reinstatement and payment of compensatory and punitive damages "could be obtained by the individual

aggrieved." *Id.* at 739. The Ninth Circuit found that any relief unique to DFEH was "tangential" to the relief sought for the single employee. *Id.*

By contrast, in *Nevada*, the Ninth Circuit found that Nevada was a real party in interest where Nevada's Attorney General filed a complaint on behalf of Nevada consumers against Bank of America and other defendants for deceptive trade practices related to the 2008 mortgage crisis. *Nevada*, 672 F.3d at 670–72. The Ninth Circuit first determined that Nevada's Attorney General had statutory authority to pursue its claims. *Id.* at 670. It also found that Nevada had a "specific, concrete interest in eliminating any deceptive practices" that had afflicted Nevada consumers. *Id.* at 670. The Ninth Circuit articulated, "[u]nlike the California DFEH, which sued on behalf of a *single* aggrieved employee, here, the Nevada Attorney General sued to protect the hundreds of thousands of homeowners in the state allegedly deceived by Bank of America, as well as those affected by the impact of Bank of America's alleged frauds on Nevada's economy." *Id.* at 670 (emphasis in original). Furthermore, the Ninth Circuit found that Nevada had a substantial interest in the requested injunctive relief and civil penalties. *Id.* at 671–72 ("Unlike in *Lucent,* where the interests that were unique to DFEH's lawsuit were 'tangential,' here Nevada seeks substantial relief that is available to it alone.") Specifically, Nevada sought enforcement of a consent judgment that disclaimed a private right of action, civil penalties under Nevada's Deceptive Trade Practices Act that were not available to individual consumers, and injunctive relief. *Id.* at 672.

For the reasons articulated below, the present case is more analogous to *Nevada* than to *Lucent*. California is a real party in interest, there is no diversity of citizenship and remand is required.

**C.     California as the Real Party in Interest**

As an initial matter, Plaintiff, by and through County Counsel for the County of San Diego, has statutory authority to bring its first cause of action under California Civil Code § 3273.62. California Civil Code § 3273.62(d), which codified California Assembly Bill 1089, makes it unlawful to sell or market a CNC milling machine or three-dimensional

printer in a manner that "is targeted at purchasers seeking to manufacture firearms or that otherwise affirmatively promotes" the machine's "utility in manufacturing firearms." It stipulates:

> In the name of the people of the State of California, the Attorney General, county counsel, or city attorney may bring an action in any court of competent jurisdiction to establish that a person has violated this section, or Section 29185 of the Penal Code, and seek a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, as well as injunctive relief sufficient to prevent the person and any other defendant from further violating the law.

Cal. Civ. Code § 3273.62(d). San Diego County Counsel also has authority to bring its UCL claim. Cal. Bus. & Prof. Code § 17204.

Additionally, "[l]ike the state in *Nevada*, the State of California . . . has concrete interests in this litigation and will substantially benefit from the remedy [sought]." *Monsanto Co.*, 2022 WL 2355195, at *3 (holding California was real party in interest in pollution litigation against Monsanto where California had concrete interests "to clean its waters of [toxic chemicals], keep its fish and wildlife healthy, keep its beaches usable, and prevent deadly diseases that arise from the ingestion of [toxic chemicals]"). Here, the State of California seeks to prevent the proliferation of ghost guns and mitigate the unique public health and safety risks posed by them. (Compl. ¶¶ 55–59.) Plaintiff alleges that "[g]host guns such as the ones that can be manufactured using the Coast Runner are fueling an epidemic of violence across the country" and are particularly dangerous "precisely because they are untraceable and largely unregulated." (*Id.* ¶¶ 57–58.) Plaintiff points to two California shootings conducted by individuals who were not legally permitted to purchase firearms (one was a minor and one failed a mandatory background check) but who nevertheless acquired and wielded untraceable ghost guns to kill innocent people. (*Id.* ¶ 58.) California has specific and concrete interests in holding entities to account that violate California's firearm and consumer safety laws, in turn potentially exacerbating criminal violence and posing serious risks to not just a single individual or entity, but to all Californians. *See e.g., California v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS DFM,

2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014) (finding that California's interest in ending the opioid epidemic that was "jeopardizing the health and safety of all Californians—both through direct harm to opioid users and indirect harm to communities in the form of increased crime rates, hospital utilization, joblessness and broken families" was a "far cry from the 'general governmental interest[s]' present in *Lucent* and much more akin to the 'specific, concrete' interest the State of Nevada had in remedying the wide-ranging effects of the mortgage and foreclosure crisis in *Nevada*").

Defendants argue, without citation to legal authority, that "San Diego County has no real concrete stake in this litigation" because Plaintiff does not allege "that any [D]efendant ever sold a Coast Runner CNC machine to anyone in San Diego." (Opp'n at 10 n.2.) In response, Plaintiff asserts that Defendant's argument goes to the merits of the case, not to jurisdiction. (Doc. No. 17, "Reply", at 10.) The Court agrees with Plaintiff. The People of California have a concrete interest in this litigation for the reasons stated above.

The relief Plaintiff seeks further supports that the State of California is a real party in interest. As in *Nevada*, and unlike in *Lucent*, Plaintiff seeks "substantial relief . . . available to it alone," including injunctive relief to block Defendants from selling the Coast Runner in California, as well as civil penalties under California Civil Code § 3273.62(a) and California Business & Professional Code § 17200 et seq. *Nevada*, 672 F.3d at 672; *see also Purdue Pharma L.P.*, 2014 WL 6065907 at *3 (finding that the relief sought by Plaintiff, including civil penalties under the UCL and injunctive relief, "compels the conclusion that the State of California is the real party in interest").

Defendants argue that the Giffords Law Center is the real plaintiff in interest for two reasons. First, Defendants assert that an attorney at the Giffords Law Center and a member of San Diego County's Board of Supervisors both stated that the County of San Diego and the Giffords Law Center have "partnered" on this litigation. (Opp'n at 8–9.) It is evident from the face of the complaint that the Giffords Law Center and San Diego County Counsel serve as co-counsel for Plaintiff. (Compl. ¶ 2.) Defendants do not allege any facts to suggest that the partnership between the Giffords Law Center and San Diego County Counsel

extends beyond the co-counsel relationship in any way to imply that the Giffords Law Center, rather than the State of California, is the real plaintiff in interest. Second, Defendants argue that the "Giffords Law Center is engaged in a long-term litigation campaign that is expressly targeted against Defendant Defense [Distributed] and its founder Cody Wilson." (*Id.* at 9–10.) While Giffords Law Center may have historically litigated against Defendants, Defendants do not offer any reasoning as to why counsel's involvement in prior litigation merits the Giffords Law Center becoming the plaintiff here.[3] What's more, Defendants do not argue, and the Court is unaware, of how the injunctive relief and civil penalties sought by Plaintiff would benefit the Giffords Law Center. (*See generally* Opp'n.) Rather, as articulated above, the State of California has concrete interests in this litigation and will substantially benefit from the remedy [sought]." *Monsanto Co.*, 2022 WL 2355195, at *3.

Defendants do not satisfy their burden to establish that removal is proper. "[A] defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane*, 749 F.3d 1117, 1122 (9th Cir. 2014); *see also Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). In the Notice of Removal, Defendants summarily assert that "this action's real plaintiff in interest is the Giffords Law Center to Prevent Gun Violence" without providing any additional factual basis in support. (Removal Notice at 2.) In response to Plaintiff's motion to remand, Defendants do not elaborate or allege any plausible facts to establish how or why the Giffords Law Center would be the Plaintiff in interest. (*See generally* Opp'n.) Because Defendants only offer conclusory assertions that the Giffords Law Center is the real

---

[3] Plaintiff disputes that Giffords Law Center ever sued any of the Defendants in this present litigation. (Reply at 10 n.2.) Plaintiff concedes only that Gun Owners for Safety, a group associated with the Giffords Law Center, filed *amicus* briefs in a Supreme Court and Fifth Circuit appeals involving Defense Distributed. (*Id.*)

plaintiff in interest, they have not met their burden. *Blackburn v. FCA US LLC*, No. 16CV1507 AJB (WVG), 2016 WL 4191049, at *3 (S.D. Cal. Aug. 8, 2016) (granting motion to remand where "notice of removal lacks information as to [the defendant] and whether it is considered a juridical person for the purposes of establishing diversity jurisdiction").

### D. Defendants' Requests for Jurisdictional Discovery, Leave to Amend Notice of Removal, and Abeyance

In response to Plaintiff's motion to remand, Defendants made several requests for if the Court found that California is the real party in interest. Defendants request (1) leave to amend Defendants' notice of removal "to supply more detailed allegations about why and how Giffords Law Center is the real party in interest," (Opp'n at 5), (2) additional jurisdictional discovery into the nature of the partnership between the Giffords Law Center and San Diego's County Counsel, (*id.* at 9), and (3) in the event the Court decides to remand, a 21-day abeyance "to ensure that Defendants[] do not lose their appellate rights before they may be pursued," (*id.* at 11).

The Court denies Defendants' request for leave to amend. Defendants do not cite any new plausible factual allegations supporting their contention that the Giffords Law Center is the real plaintiff in interest, so granting leave for Defendants to file an amended notice "would be futile on the facts alleged." *Sawyer v. IBEW Loc. 569*, 2021 WL 509024, at *2 (S.D. Cal. Feb. 11, 2021). Additional jurisdictional discovery is denied for the same reason—Defendants do not outline the contours of the additional jurisdictional discovery they seek, nor do they allege the kinds of information they anticipate discovering. Without more, the Court denies Defendants' request. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023) (affirming denial of jurisdictional discovery where such discovery "would be little more than a fishing expedition seeking support for jurisdictional theories one of which is farfetched"). Finally, given that the Court determined that it lacks subject matter jurisdiction because the State of California is not a citizen of itself for purposes of establishing diversity jurisdiction, the Court denies Defendants' request to hold its decision

in abeyance for 21 days for Defendants to appeal. Holding the Court's decision in abeyance would diverge from federal law that specifies that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d); *see also Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1064 (9th Cir. 2021)("[I]f a remand order is based on § 1447(c), then § 1447(d) precludes review by any federal court.")

Because California is a real party in interest, and Defendants have not met their burden to establish that removal is proper, remand is required. *Monsanto Co.*, No. 222CV02399ODWSKX, 2022 WL 2355195, at *3.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand. The Court **DENIES** Defendants' requests for jurisdictional discovery, leave to amend their Notice of Removal, and abeyance to allow for appeal. Accordingly, the Court **DENIES AS MOOT** Defendants' motion to change venue, (Doc. No. 5), and motion to dismiss, (Doc. No. 6).

**IT IS SO ORDERED**.

Dated: October 4, 2024

Hon. Anthony J. Battaglia
United States District Judge